**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| 3M COMPANY,<br><br>　　　　　　　　　Plaintiff,<br><br>　　　　-against-<br><br>PERFORMANCE SUPPLY, LLC,<br>　　　　　　　　　Defendant. | Case No.:<br><br>**Jury Trial Demand** |

## COMPLAINT

Plaintiff 3M Company ("Plaintiff" or "3M"), by and through its undersigned attorneys, as and for its Complaint against Defendant Performance Supply, LLC ("Defendant"), hereby alleges as follows based on knowledge of its own actions, and on information and belief as to all other matters:

## NATURE OF THE ACTION

1.　　This lawsuit concerns Defendant's use of Plaintiff's famous "3M" trademarks to perpetrate a false and deceptive price-gouging scheme on unwitting consumers, including agencies of government, during the global COVID-19 pandemic.

2.　　Throughout its history, 3M has been providing state-of-art, industry-leading scientific and medical products to consumers throughout the world under its famous 3M marks. Based on this longstanding, continuous use, consumers associate the 3M marks uniquely with 3M. Now, more than ever, consumers are also relying on the famous 3M marks to indicate that the products offered thereunder are of the same superior quality that consumers have come to expect over the past century.  This is especially true with respect to 3M's numerous industry-leading healthcare products and personal protective equipment ("PPE"), including Plaintiff's 3M-brand N95 respirators.

3.      Healthcare professionals and other first responders are heroically placing their health and safety on the line to battle COVID-19.  To assist in the battle against COVID-19, 3M is supplying healthcare workers and other first responders with 3M-brand N95 respirators.  For example, in the last week of March 2020, 3M supplied healthcare workers throughout the United States with 10 million of its 3M-brand N95 respirators.  3M also recently announced that it will import 166.5 million of its 3M-brand N95 respirators into the United States in the next three months to supplement its US production, and has invested the capital and resources necessary to double its current annual global production of 1.1 billion respirators.  In response to the COVID-19 outbreak and surge in need for N95 respirators, 3M has doubled its global output rate to nearly 100 million respirators per month, and it expects to produce around 50 million respirators per month in the United States by June 2020.

4.      The demand for 3M-branded respirators has grown exponentially in response to the pandemic, and 3M has been committed to seeking to meet this demand while keeping its respirators priced fairly.  3M has not increased the prices that it charges for 3M respirators as a result of the COVID-19 outbreak.

5.      Unfortunately, any number of wrongdoers seek to exploit the current public health emergency and prey on innocent parties through a variety of scams involving 3M N95 respirators and other products in high demand.  These scams include unlawful price-gouging, fake offers, counterfeiting, and other unfair and deceptive practices—all of which undercut the integrity of the marketplace and constitute an ongoing threat to public health and safety.

6.      In response to fraudulent activity, price-gouging and counterfeiting related to N95 respirator masks that has spiked in the marketplace in response to the pandemic, 3M is taking an active role in combating these activities.  3M's actions include working with law enforcement

authorities around the world, including the U.S. Attorney General, state Attorneys General and local authorities, and creating a "3M COVID-19 Fraud hotline" for the United States and Canada that end users and purchasers of 3M products can call for information to help detect fraud and avoid counterfeit products.  3M is also publishing information on its website to help inform the purchasing public about 3M's prices and products so that they can avoid fraud.   Further information about 3M's efforts is set forth in the 3M press release and publication attached hereto as **Exhibits 1 and 2**.  This Complaint is another part of these efforts.

7.      Despite 3M's extensive efforts during COVID-19, unsavory characters continue their quests to take advantage of healthcare workers, first responders, and others in a time of need and trade off the fame of the 3M brand and marks.  Defendant is a prime example of this unlawful behavior.

8.      On or about March 30, 2020, Defendant sent a Formal Quote to New York City's Office of Citywide Procurement, offering to sell millions of Plaintiff's 3M-brand N95 respirator masks at a grossly inflated aggregate price of approximately $45 million.  Defendant is not an authorized distributor of any of Plaintiff's products and has no rights to use Plaintiff's famous 3M marks.  Nonetheless, to confuse and deceive New York City officials into believing that Defendant was an authorized distributor of Plaintiff's products, Defendant reproduced the famous 3M marks throughout the Formal Quote, and attached to it Technical Specification Sheets that prominently feature Plaintiff's famous 3M marks.  The Formal Quote itself also sought to confuse its recipient by referring to the St. Paul, Minnesota headquarters of 3M as opposed to Defendant's New Jersey headquarters, as well as repeatedly referring to the offer's acceptance being at 3M's discretion—implying, falsely, that the Formal Quote came from 3M.  Defendant's scheme worked.  Indeed, as part of the Citywide Procurement Office's quality-assurance measures, officials prepared a Bid

Evaluation Request, wherein they mistakenly identified Defendant as a "vendor" of 3M-brand N95 respirators—twice.  Compounding Defendant's bad acts, the prices at which it offered to sell 3M-brand N95 respirators to New York City's Procurement Office were 500%-600% *above* 3M's list price.  This offer constituted extreme price-gouging by any measure, including under New York State's statutory provision (NEW YORK GENERAL BUSINESS LAW § 396-r).  Not only does such price-gouging further strain the limited resources available to combat COVID-19, but such conduct justifiably has caused public outrage, which threatens imminent and irreparable harm to 3M's brand as Defendant and similar pandemic profiteers promote an improper association between 3M's marks and exploitative pricing behavior.

9.     3M does not – and will not – tolerate individuals or entities deceptively trading off the fame and goodwill of the 3M brand and marks for personal gain.  This is particularly true against those who seek to exploit the surge in demand for 3M-brand products during the COVID-19 global pandemic, which already has claimed tens of thousands of lives worldwide and more than 5,000 lives in New York State alone.

10.     Accordingly, to further protect governmental actors and consumers from confusion and mistake, to reduce the amount of time and energy that government officials are forced to waste interacting with such schemes, as well as to forestall any further diminution to the 3M brand and marks' reputation, fame, and goodwill, Plaintiff brings this lawsuit against Defendant for federal and state trademark infringement, unfair competition, false association, false endorsement, false designation of origin, trademark dilution, false advertising, and deceptive acts and practices.  Plaintiff also seeks preliminary and permanent injunctive relief.  As described below, any damages, costs, or fees recovered by Plaintiff will be donated to charitable COVID-19 relief efforts.

## THE PARTIES

11.     Plaintiff 3M Company is a Delaware corporation, with a principal place of business and corporate headquarters located at 3M Center, St. Paul, Minnesota 55144.

12.     On information and belief, Defendant Performance Supply, LLC is a New Jersey limited liability company, with a principal place of business at 3 Westbrook Way, Manalapan, New Jersey 07726.

## JURISDICTION AND VENUE

13.     The claims for trademark infringement, unfair competition, false association, false endorsement, false designation of origin, trademark dilution, and false advertising, respectively, asserted in Counts I - IV, *infra*, arise under the Trademark Act of 1946 (as amended; the "Lanham Act"), namely, 15 U.S.C. §§ 1051 *et seq*.  Accordingly, this Court has original and subject-matter jurisdiction over Counts I – IV pursuant to 28 U.S.C. §§ 1331, 1338(a), and 15 U.S.C § 1121(a).

14.     The claims for deceptive acts and practices, false advertising, dilution, trademark infringement and unfair competition, respectively, asserted in Counts V - IX, *infra*, arise under New York statutory and common law, and are so related to the federal claims asserted in Counts I - IV, *infra*, that they form part of the same case or controversy.  Accordingly, this Court has supplemental jurisdiction over Counts V - IX pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

15.     Defendant has purposefully availed itself of the privilege of transacting business in this District.  Defendant has also committed and intentionally directed tortious acts towards residents and governmental agencies in this District.  For example, Defendant recently used Plaintiff's famous 3M marks as part of a price-gouging scheme to deceive New York City officials located in this District into believing that Defendant was authorized by 3M to sell millions of 3M-brand N95 respirator masks for an aggregate price of roughly $45 million—

5

several multiples of the 3M list price. 3M's claims arise out of and relate to Defendant's transactions of business, and tortious acts committed in this District. Based on the foregoing, this Court has long-arm jurisdiction over Defendant pursuant to CPLR New York Civil Practice Law and Rules § 302(a)(1)-(2), and Fed. R. Civ. P. 4(k).

16.     A substantial part of the events giving rise to the claims asserted, *infra*, occurred in this District. Therefore, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

17.     Defendant is subject to personal jurisdiction in this District. Therefore, venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(3).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### I.    Plaintiff

#### A.  3M

18.     3M has grown from humble beginnings in 1902 as a small-scale mining venture in Northern Minnesota to what it is today, namely: an industry-leading provider of scientific, technical, and marketing innovations throughout the world. Today, 3M's portfolio includes more than 60,000 goods and services, ranging from household and school supplies, to industrial and manufacturing materials, to medical supplies and equipment.

#### B.  The 3M Brand

19.     3M offers its vast array of goods and services throughout the world under numerous brands, including, for example: ACE; POST-IT; SCOTCH; NEXCARE; and more. 3M also uses its famous "3M Science. Applied to Life" slogan in connection with the promotion of its goods and services. Notwithstanding the widespread goodwill and resounding commercial success enjoyed by these brands, 3M's most famous and widely recognized brand is its eponymous "3M" brand.

20.     The 3M brand is associated with products and materials for a wide variety of medical devices, supplies, and PPE, including, for example: respirators; stethoscopes; medical tapes; surgical gowns, blankets, and tape; bandages and other wound-care products; and more.  As such, 3M-branded products are highly visible throughout hospitals, nursing homes, and other care facilities where patients, care providers, and procurement officers value and rely upon the high quality and integrity associated with the 3M brand.

**C.  The Famous "3M" Marks**

21.     Over the past century, Plaintiff has invested hundreds of millions of dollars in advertising and promoting its 3M-brand products to consumers throughout the world (including, without limitation, its 3M-brand N95 respirator) under the standard-character mark "3M" and the inset 3M design mark (together, the "3M Marks"):



22.     For decades, products offered under Plaintiff's 3M Marks have enjoyed enormous commercial success (including, without limitation, its 3M-brand N95 respirator).  Indeed, in 2019, alone, sales of products offered under Plaintiff's 3M Marks exceeded several hundred million USD.

23.     Over the same period of time, products offered under Plaintiff's 3M Marks have regularly been the subject of widespread, unsolicited media coverage and critical acclaim.

24.     Based on the foregoing, consumers associate the 3M Marks uniquely with Plaintiff and recognize them as identifying Plaintiff as the exclusive source of goods and services offered under the 3M Marks.  Based on the foregoing, the 3M Marks have also become famous among consumers in the United States.

25.     To strengthen Plaintiff's common-law rights in and to its famous 3M Marks, Plaintiff has obtained numerous federal trademark registrations, including, without limitation: (i) U.S. Trademark Reg. No. 3,398,329, which covers the standard-character 3M mark in Int. Classes 9 and 10 for, *inter alia*, respirators (the "'329 Registration"); (ii) U.S. Trademark Reg. No. 2,793,534, which covers the 3M design mark in Int. Classes 1, 5, and 10 for, *inter alia*, respirators (the "'534 Registration"); and (iii) U.S. Trademark Reg. No. 5,469,903, which covers the "3M Science. Applied to Life" slogan in a number of Int. Classes, including Int. Class 9 for facial masks and respirators (the "'903 Registration").  *See* **Exhibits 3-5**.

26.     The '329, '534, and '903 Registrations are valid, in effect, and on the Principal Trademark Register.

27.     The '329 and '534 Registrations are "incontestable" within the meaning of 15 U.S.C. § 1065.  Accordingly, the '329 and '534 Registrations constitute conclusive evidence of: (i) Plaintiff's ownership of the 3M Marks; (ii) the validity of the 3M Marks; (iii) the validity of the registration of the 3M Marks; and (iv) Plaintiff's exclusive right to use the 3M Marks throughout the United States for, *inter alia*, respirators.  Relatedly, the '903 Registration constitutes *prima facie* evidence of: (i) Plaintiff's ownership of the "3M Science. Applied to Life" slogan; (ii) the validity of the "3M Science. Applied to Life" slogan; (iii) the validity of the registration of the "3M Science. Applied to Life" slogan; and (iv) Plaintiff's exclusive right to use the "3M Science. Applied to Life" slogan throughout the United States for, *inter alia*, respirators (the "3M Slogan").

28.     Plaintiff's famous 3M Marks do more than identify Plaintiff as the exclusive source of goods and services offered thereunder.  Indeed, the famous 3M Marks also signify to consumers that 3M-brand products offered under the 3M Marks are of the highest quality and adhere to the strictest quality-control standards.  Now, more than ever, consumers rely on the famous 3M Marks'

ability to signify that products offered under the 3M Marks are of the same high quality that consumers have come to expect of the 3M brand over the past century.

**D. Plaintiff's Extensive Efforts to Assist With the Battle Against COVID-19**

29.     Medical professionals and first responders throughout the world are donning extensive PPE as they place their health and safety on the line in the battle against COVID-19.  As Plaintiff states on the homepage of its website, it is "committed to getting personal protective equipment to healthcare workers":



30.     Among the PPE that 3M is providing to the heroic individuals on the front lines of the battle against COVID-19 are Plaintiff's 3M-brand N95 respirators.

31.     Inset, below, is an image of Plaintiff's 3M-brand, Model 8210 respirator:



32.     Authentic N95 respirators reduce exposure to airborne biological particles and liquid contamination when appropriately selected, fitted, and worn.

33.     Based on the exponential increase in demand for 3M-brand N95 respirators, Plaintiff has invested the necessary capital and resources to double its global annual production of 1.1 billion 3M-brand N95 respirators. *See* Exhs. 1,2 **What 3M has *not* done, though, is increase its prices**. *See id*.

34.     Unfortunately, certain third parties do not share 3M's sense of civic responsibility during this time of crisis.  Indeed, opportunistic third parties are seeking to exploit the increased demand for Plaintiff's 3M-brand N95 respirators by offering to sell them for exorbitant prices, selling counterfeit versions of them, and accepting money for 3M-brand N95 respirators despite not having the product to sell and/or never intending to deliver the product to the unwitting buyer— in many instances, a public authority, such as the City of New York, which struggles to address the enormous financial and logistical challenges presented by COVID-19.

35.     Accordingly, to protect consumers on the front lines of the COVID-19 battle from deception and inferior products, to reduce time wasted by governmental officials on scams, as well as to protect the widespread reputation and goodwill enjoyed by Plaintiff's carefully curated 3M brand, Plaintiff is working diligently with law enforcement, retail partners, and others to combat unethical and unlawful business practices related to 3M-brand N95 respirators.  For example, in late-March 2019, 3M's Chief Executive Officer, Mike Roman, sent a letter to U.S. Attorney General, William Barr, and the President of the National Governor's Association, Larry Hogan of Maryland, to offer 3M's partnership in combatting price-gouging.  As shown in the inset image, additional examples of 3M's efforts to combat price-gouging, counterfeiting, and other unlawful conduct during COVID-19 include:

a. 3M posted on its website the list price for its 3M-brand N95 respirators so that consumers can readily identify price-gouging (*See* **Exhibit 6**);

b. 3M created a form on its website that consumers can use to report suspected incidents of price-gouging and counterfeiting (*See* **Exhibit 7**); and

c. 3M created a fraud "hotline" that consumers can call to report suspect incidents of price-gouging and counterfeiting:



## II. Defendant's Unlawful Conduct

36.     Despite Plaintiff's extensive measures to combat price-gouging and counterfeiting of its 3M-brand N95 respirators, these illicit activities continue.  Defendant is a prime example of this unlawful behavior, which is damaging to the 3M brand and public health.

37.     On or about March 30, 2020 – while New York City was reporting record numbers of COVID-19 positive tests and deaths – Defendant emailed a document, titled *Formal Quote*, to Ebony Roberson of New York City's Office of Citywide Procurement.  *See* **Exhibit 8**.

38.     In the Formal Quote, Defendant offered to sell New York City's Procurement Office: (i) 2 million 3M-brand, N95 Model 8210 respirators for $6.05 each, and (ii) 5 million 3M-brand, N95 Model 1860 respirators for $6.35 each.  *See* Exh. 8.

39.     In the one-page Formal Quote, Defendant reproduced Plaintiff's famous 3M marks *nine* times.  *See* Exh. 8.

40.     Defendant also attached to the Formal Quote a Technical Specification Sheet for both Models of 3M-brand N95 respirators that Defendant purportedly had available for sale.  *See* Exh. 8.  Plaintiff's famous 3M design mark, and 3M Slogan, prominently appeared in the upper left-hand corner of both Technical Specification Sheets.  *See id*.  Plaintiff's famous 3M design mark also appeared in the lower left-hand corner of both Technical Specification Sheets.  *See id*. Additionally, Plaintiff's famous standard-character 3M mark appeared in the Technical Specification Sheets.  *See id*.

41.     Defendant's rampant use of the 3M Marks throughout the Formal Quote, combined with the presence of the Plaintiff's 3M Marks and 3M Slogan in Technical Specification Sheets, caused New York City officials to mistakenly believe that Defendant was an authorized distributor of Plaintiff's products and/or otherwise had an association or affiliation with Plaintiff and its products.  To be sure, after Defendant sent the Formal Quote to Ms. Roberson, New York City officials prepared an "Evaluation Request – Bid Document Review" as part of their quality-assurance measures.  *See* Exh. 8.  In the Evaluation Request, New York City officials identified Defendant as a "vendor" – twice – of 3M-brand, N95 Model 8210 and 1860 respirators.  *See id*. However, the New York City officials were mistaken.  Defendant is not, and never has been, an authorized distributor or vendor of Plaintiff's products.  Defendant also does not have, and has never had, an association or affiliation with Plaintiff.

42.     Defendant's Formal Quote also contained false, misleading, and/or deceptive statements.  For example, in the Formal Quote, Defendant stated:

> "Due to the national emergency, acceptance of the purchase order is at the full discretion of 3M and supplies are based upon availability.  The N95 masks 3M can begin shipping in 2-4 weeks CIF at any of 3M [sic] plants in the USA or 3M Plants Overseas according to their manufacturing schedule.  3M choose the plant.  Order may be shipped in whole or in part."  *See* Exh. 8.

12

43.     The level of specificity in the above-quoted portion of the Formal Quote, including, for example, that any purchase order is subject to 3M's discretionary approval, that 3M allegedly ships its products CIF, and that 3M will determine the production site for the order, are all false and likely to mislead and/or deceive a reasonable consumer into believing that Defendant is an authorized distributor of 3M products and/or has an association or affiliation with 3M.  Sadly, in this case, Defendant's Formal Quote actually misled and deceived experienced buyers in the Procurement Office of one of the world's largest cities into believing that Defendant was an authorized "vendor" of approximately $45 million-worth of 3M-brand N95 respirators.

44.     Another equally detestable element of Defendant's unlawful conduct is price-gouging.  Defendant's quote of $6.05 per 3M brand, N95 Model 8120 respirator is approximately 600% over 3M's suggested list price of $1.02-$1.31 per respirator.  *See* Exh. 3. Defendant's quote of $6.35 per 3M brand, N95 Model 1860 respirator is 500% increase over 3M's list price of $1.27 per respirator.  *See* Exh. 3.

45.     The mere association of 3M's valuable brand with such shameless price-gouging harms the brand, not to mention its more serious threat to public health agencies that are under strain in the midst of a worldwide pandemic.

46.     Based on the foregoing, Plaintiff seeks relief against Defendant for federal and state trademark infringement, unfair competition, false association, false endorsement, false designation of origin, trademark dilution, false advertising, and deceptive acts and business practices.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(*Trademark Infringement Under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)*)
(*Infringement of the Federally Registered 3M Marks and 3M Slogan*)

47.     Plaintiff repeats and incorporates by reference the statements and allegations in paragraphs 1 - 46 of the Complaint as though set forth fully herein.

48.     Count I is a claim for trademark infringement under 15 U.S.C. § 1114.

49.     Plaintiff is the exclusive owner of each of the federally registered 3M Marks, and the 3M Slogan.

50.     Plaintiff has the exclusive right to use each of the 3M Marks, and the 3M Slogan, in United States commerce for, *inter alia*, advertising, promoting, offering for sale, and selling Plaintiff's 3M-brand N95 respirators.

51.     Plaintiff's exclusive rights in and to each of the 3M Marks, and the 3M Slogan, predate any rights that Defendant could establish in and to any mark that consists of "3M" in whole and/or in part.

52.     Both of the 3M Marks, and the 3M Slogan, are fanciful and/or arbitrary when used for respirators and, therefore, are inherently distinctive.

53.     Both of the 3M Marks, and the 3M Slogan, identify Plaintiff as the exclusive source of products offered under the 3M Marks (including, without limitation, 3M-brand N95 respirators) and, therefore, the 3M Marks, and the 3M Slogan, have acquired distinctiveness.

54.     Defendant is using the 3M Marks, and the 3M Slogan, in commerce to advertise, promote, offer for sale, and sell 3M-brand N95 respirators, including, for example, in the Formal Quote.

55.     Defendant's use of the 3M Marks, and the 3M Slogan, in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, is causing, and is likely to continue causing, consumer confusion, mistake, and/or deception about whether Defendant is 3M, and/or whether Defendant is a licensee, authorized distributor, and/or affiliate of 3M and/or products that Plaintiff offers under its 3M Marks and/or 3M Slogan, including, without limitation, 3M-brand N95 respirators.

14

56.     Defendant's use of the 3M Marks, and the 3M Slogan, in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, is causing, and is likely to continue causing, consumer confusion, mistake, and/or deception about whether Defendant and/or Defendant's products are affiliated, connected, and/or associated with 3M and/or products that Plaintiff offers under its 3M Marks and/or 3M Slogan, including, without limitation, 3M-brand N95 respirators.

57.     Defendant's use of the 3M Marks, and the 3M Slogan, in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein is causing, and is likely to continue causing, consumer confusion, mistake, and/or deception about whether Defendant and/or Defendant's products originate with, and/or are sponsored or approved by, and/or offered under a license from, 3M or vice versa.

58.     Plaintiff has not consented to the use of its famous 3M Marks, or 3M Slogan, by Defendant.

59.     Based on Plaintiff's longstanding and continuous use of its 3M Marks, and 3M Slogan, in United States commerce, as well as the federal registration of Plaintiff's 3M Marks, and 3M Slogan, Defendant had actual and constructive knowledge of Plaintiff's superior rights in and to the 3M Marks, and the 3M Slogan, when Defendant began using the 3M Marks, and the 3M Slogan, as part of its bad-faith scheme to confuse and deceive consumers, as alleged, herein.

60.     Upon information and belief, Defendant adopted and uses the 3M Marks, and the 3M Slogan, in furtherance of Defendant's willful, deliberate, and bad-faith scheme of exploiting the extensive consumer goodwill, reputation, fame, and commercial success of products that Plaintiff offers under its 3M Marks, and its 3M Slogan, including, without limitation, 3M-brand N95 respirators.

61.     Upon information and belief, Defendant has made, and will continue to make, substantial profits and gain from its unauthorized use of Plaintiff's 3M Marks, and 3M Slogan, to which Defendant is not entitled at law or in equity.

62.     Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark infringement in violation of 15 U.S.C. § 1114(a).

63.     Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.  The damage suffered by Plaintiff is exacerbated by the fact that Defendant is advertising and offering for sale 3M-branded N95 respirator masks at exorbitantly inflated prices during a global pandemic when Plaintiff's products are necessary to protect public health.  Such conduct has inspired intense public criticism of the manner in which Plaintiff's respirator masks are being distributed and sold during the COVID-19 pandemic and significant confusion about Plaintiff's role in the marketplace for masks that are essential to safeguarding public health.  Whereas Plaintiff's corporate values and brand image center around the application of science to improve lives, Defendant's conduct imminently and irreparably harms Plaintiff's 3M brand.

64.     Plaintiff has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
(*Unfair Competition, False Endorsement, False Association, and False Designation of Origin Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)*)
(*Use of the 3M Marks and 3M Slogan*)

65.     Plaintiff repeats and incorporates by reference the statements and allegations in paragraphs 1 - 64 of the Complaint as set forth fully herein.

66.     Count II is a claim for federal unfair competition, false endorsement, false association, and false designation of origin under 15 U.S.C. § 1125(a)(1)(A).

67.     Upon information and belief, Defendant's acts and conduct complained of herein constitute unfair competition, false endorsement, false association, and/or false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A).

68.     Upon information and belief, Defendant's use of Plaintiff's famous 3M Marks, and 3M Slogan, to advertise, market, offer for sale, and/or sell purported 3M-brand N95 respirators to consumers at exorbitant prices, in general, and during a global pandemic such as COVID-19, specifically, also constitutes unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

69.     Defendant has also falsely held itself out to be an agent of and/or authorized by Plaintiff to sell and/or distribute 3M-branded products, when this is not the case.

70.     Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

71.     Plaintiff has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF
*(Trademark Dilution Under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c))*
*(Dilution of the Famous 3M Marks)*

72.     Plaintiff repeats and incorporates by reference the statements and allegations in paragraphs 1 - 71 of the Complaint as though set forth fully herein.

73.     Count III is a claim for federal trademark dilution under 15 U.S.C. § 1125(c).

74.     Plaintiff's 3M Marks were famous before and at the time Defendant began using the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, 3M-brand N95 respirators).

75.     Defendant's use of Plaintiff's famous 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, 3M-brand N95 respirators) is likely to dilute the distinctive quality of the

famous 3M Marks, such that famous 3M Marks' established selling power and value will be whittled away.

76.     Defendant's use of Plaintiff's famous 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, 3M-brand N95 respirators) is likely to dilute the distinctive quality of the famous 3M Marks, such that famous 3M Marks' ability to identify Plaintiff as the exclusive source of products offered under the 3M Marks (including, without limitation, Plaintiff's 3M-brand N95 respirators) will be whittled away.

77.     Defendant's use of Plaintiff's famous 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including, without limitation, 3M-brand N95 respirators) at exorbitant prices, in general, and during a global pandemic such as COVID-19, specifically, is likely to dilute the reputation of the famous 3M Marks, such that famous 3M Marks' established ability to indicate the superior quality of Products offered under such Marks (including, without limitation, Plaintiff's 3M-brand N95 respirators), will be whittled away.

78.     Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark dilution in violation of 15 U.S.C. § 1125(c).

79.     Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.  The damage suffered by Plaintiff is exacerbated by the fact that Defendant is advertising and offering for sale 3M-branded N95 respirators at exorbitantly inflated prices during a global pandemic when Plaintiff's products are necessary to protect public health.  Such conduct has inspired intense public criticism of the manner in which Plaintiff's respirators are being distributed and sold during the COVID-19

pandemic and significant confusion about Plaintiff's role in the marketplace for respirators that are essential to safeguarding public health.  Whereas Plaintiff's corporate values and brand image center around the application of science to improve lives, Defendant's conduct imminently and irreparably harms Plaintiff's 3M brand.

80.     Plaintiff has no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF
*(False Advertising Under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B))*
*(Defendant's Formal Quote)*

81.     Plaintiff repeats and incorporates by reference the statements and allegations in paragraphs 1 - 80 of the Complaint as though set forth fully herein.

82.     Count IV is a claim for false and deceptive advertising under 15 U.S.C. § 1125(a)(1)(B).

83.     The statements that Defendant made in its Formal Quote constitute commercial advertising and/or commercial promotion.

84.     The statements that Defendant made in its Formal Quote contained false, misleading, and/or deceptive statements about the nature, characteristics, qualities, and/or geographic origin of Defendant and/or the products that Defendant allegedly had available for sale.

85.     The statements that Defendant made in its Formal Quote contained false, misleading, and/or deceptive statements about the nature, characteristics, qualities, and/or geographic origin of Plaintiff and Plaintiff's 3M-brand products, including, without limitation, Plaintiff's 3M-brand N95 respirators.

86.     The false, misleading, and/or deceptive statements in Defendant's Formal Quote were material to New York City's purchasing decisions, including, without limitation, its preparation of the aforementioned Evaluation Request, wherein officials mistakenly identified Defendant as a "vendor" of 3M-brand N95 respirators, twice.

87.     Defendant placed its Formal Quote into interstate commerce by, *inter alia*, sending it to at least one New York City official's email account, namely, Ms. Roberson.

88.     Defendant's Formal Quote directly and/or proximately caused and/or is likely to cause Plaintiff to suffer harm in the form of lost sales (including, without limitation, lost sales of Plaintiff's 3M-brand N95 respirators), as well as irreparable diminution to the 3M brand and 3M Marks' reputation, fame, and goodwill.

89.     Upon information and belief, Defendant's acts and conduct complained of herein constitute false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

90.     Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.  The damage suffered by Plaintiff is exacerbated by the fact that Defendant is advertising and offering for sale 3M-branded N95 respirator masks at exorbitantly inflated prices during a global pandemic when Plaintiff's products are necessary to protect public health.  Such conduct has inspired intense public criticism of the manner in which Plaintiff's respirator masks are being distributed and sold during the COVID-19 pandemic and significant confusion about Plaintiff's role in the marketplace for masks that are essential to safeguarding public health.  Whereas Plaintiff's corporate values and brand image center around the application of science to improve lives, Defendant's conduct imminently and irreparably harms Plaintiff's 3M brand.

91.     Plaintiff has no adequate remedy at law.

**FIFTH CLAIM FOR RELIEF**
(*Deceptive Acts and Practices Under NEW YORK GENERAL BUSINESS LAW § 349*)
(*Use of the 3M Brand, Famous 3M Marks, and 3M Slogan; Defendant's Formal Quote*)

92.     Plaintiff repeats and incorporates by reference the statements and allegations in paragraphs 1 - 91 of the Complaint as though set forth fully herein.

93.     Count V is a claim for deceptive acts and practices under NEW YORK GENERAL BUSINESS LAW ("GBL") § 349.

94.     By using Plaintiff's 3M Marks, and 3M Slogan, to confuse consumers during a global pandemic, such as COVID-19, about the source, price, availability, quality, and/or origin of 3M-brand N95 respirators, Defendant's conduct poses a direct and/or proximate threat to the health and safety of the general public, including consumers within this District.  For example, because of Defendant's use of Plaintiff's famous 3M Marks, and 3M Slogan, throughout the Formal Quote, New York City officials mistakenly believed that Defendant was an authorized vendor of 3M-brand N95 respirators.  Based on the mistaken belief that Defendant was an authorized distributor of 3M-brand N95 respirators, New York City officials took steps to commit approximately $45 million-worth of critical resources during the height of COVID-19 to purchasing products from Defendant (including, for example, preparing the Evaluation Request). Accordingly, Defendant's acts and conduct complained of herein go above and beyond ordinary trademark infringement.

95.     Upon information and belief, Defendant's acts and conduct complained of herein constitute deceptive acts and practices in violation of GBL § 349.

96.     Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

97.     Plaintiff has no adequate remedy at law.

### SIXTH CLAIM FOR RELIEF
(*False Advertising Under* NEW YORK GENERAL BUSINESS LAW *§ 350*)
(*Defendant's Formal Quote*)

98.     Plaintiff repeats and incorporates by reference the statements and allegations in paragraphs 1 - 97 of the Complaint as though set forth fully herein.

99.     Count VI is a claim for false advertising under GBL § 350.

100.    By creating the false, misleading, and/or deceptive impression that Defendant was an authorized distributor of 3M-brand N95 respirators during the height of COVID-19, Defendant's conduct poses a direct and/or proximate threat to the health and safety of the general public, including consumers within this District.   For example, the false, misleading, and/or deceptive statements in Defendant's Formal Quote misled and deceived New York City officials into believing that Defendant was an authorized distributor of 3M-brand N95 respirators.   Based on the mistaken belief that Defendant was an authorized distributor of 3M-brand N95 respirators, New York City official took steps to commit approximately $45 million-worth of critical resources during the height of COVID-19 to purchasing products from Defendants (including, for example, preparing the Evaluation Request).   Accordingly, Defendant's acts and conduct complained of herein go above and beyond ordinary false advertising.

101.    Upon information and belief, Defendant's acts and conduct complained of herein constitute false advertising in violation of NEW YORK GENERAL BUSINESS LAW § 350.

102.    Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

Plaintiff has no adequate remedy at law.

### SEVENTH CLAIM FOR RELIEF
(*Dilution and Injury to Business Reputation Under NEW YORK GENERAL BUSINESS LAW § 360-l*)
(*Dilution of, Injury to the 3M Brand, Famous 3M Marks, and 3M Slogan*)

103.    Plaintiff repeats and incorporates by reference the statements and allegations in paragraphs 1 - 102 of the Complaint as though set forth fully herein.

104.    Count VII is a claim for dilution under GBL § 360-*l*.

105.    Upon information and belief, Defendant's acts and conduct complained of herein constitute dilution and injury to business reputation in violation of GBL § 360-*l*.

106.    Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

107.    Plaintiff has no adequate remedy at law.

### EIGHTH CLAIM FOR RELIEF
(*Trademark Infringement Under New York Common Law*)
(*Infringement of the 3M Marks and 3M Slogan*)

108.    Plaintiffs repeat and incorporate by reference the statements and allegations in paragraphs 1 - 107 of the Complaint as though set forth fully herein.

109.    Count XIII is a claim for trademark infringement under New York common law.

110.    Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark infringement in violation of New York common law.

111.    Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

112.    Plaintiff has no adequate remedy at law.

### NINTH CLAIM FOR RELIEF
(*Unfair Competition and Passing Off Under New York Common Law*)
(*Use of the 3M Marks and 3M Slogan*)

113.    Plaintiff repeats and incorporates by reference the statements and allegations in paragraphs 1 - 112 of the Complaint as though set forth fully herein.

114.    Count IX is a claim for unfair competition under New York common law.

115.    Upon information and belief, Defendant's acts and conduct complained of herein constitute unfair competition and passing off in violation of New York common law.

116.    Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

117.    Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, based on Defendant's conduct complained of, herein, Plaintiff asks that this Court:

A.     To enter an Order, finding in Plaintiff's favor on each Claim for Relief asserted herein;

B.     Pursuant to 15 U.S.C. § 1116:

1.   Preliminarily and permanently enjoining Defendant, its agents, servants, employees, officers and all persons and entities in active concert and participation with them from using the 3M Marks (or any other mark(s) confusingly similar thereto) for, on, and/or in connection with the manufacture, distribution, advertising, promoting, offering for sale, and/or sale of any goods or services, including, without limitation, Plaintiff's 3M-brand N95 respirator Marks;

2.   Preliminarily and permanently enjoining Defendant, its agents, servants, employees, officers and all persons and entities in active concert and participation with them from falsely representing itself as being a distributor, authorized retailer, and/or licensee of Plaintiff and/or any of Plaintiff's products (including, without limitation, Plaintiff's 3M-brand N95 respirator) and/or otherwise falsely representing to have an association or affiliation with, sponsorship by, and/or connection with, Plaintiff and/or any of Plaintiff's products; and

3.   Ordering Defendant to file with the Court and serve upon Plaintiff's counsel, within 30 days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

C.     Pursuant to 15 U.S.C. § 1117:

1.   Order Defendant to provide Plaintiff with a full accounting of all manufacture, distribution and sale of products under the 3M Marks (including, without limitation, Plaintiff's 3M-brand N95 respirators), as well as all profits derived therefrom;

2.   Order Defendant to pay to Plaintiff—so as to be donated charitably pursuant to subpart G, *infra*—all of Defendant's profits derived from the sale of infringing goods offered under the 3M Marks (including, without limitation, Plaintiff's 3M-brand N95 respirators);

3.   Award Plaintiff treble actual damages—so as to be donated charitably pursuant to subpart G, *infra*—in connection with Defendant's infringement of the 3M Marks;

4.   Find that Defendant's acts and conduct complained of herein render this case "exceptional"; and

5.   Award Plaintiff—so as to be donated charitably pursuant to subpart G, *infra*—its costs and reasonable attorneys' fees incurred in this matter;

D.     Pursuant to 15 U.S.C. § 1118, order the destruction of all unauthorized goods and materials within the possession, custody, and control of Defendant and Defendant's client that bear, feature, and/or contain any copy or colorable imitation of Plaintiff's 3M Marks;

E.     Award Plaintiff pre-judgment and post-judgment interest against Defendant;

F.     Award Plaintiff such other relief that the Court deems just and equitable; and

G.     Requiring that all monetary payments awarded to Plaintiff be donated to a COVID-19 charitable organization(s)/cause(s) of Plaintiff's choosing.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury for all issues so triable pursuant to FED. R. CIV. P. 38(b) and 38(c).

Dated: April 10, 2020
　　　New York, New York

**MAYER BROWN LLP**

*/s/ A. John P. Mancini*
A. John P. Mancini
Andrew J. Calica
Jordan Sagalowsky
Jonathan W. Thomas
1221 Avenue of the Americas
New York, New York 10020-1001
Tel.: (212) 506-2500
Email: JMancini@mayerbrown.com
Email: ACalica@mayerbrown.com
Email: JSagalowsky@mayerbrown.com
Email: JWThomas@mayerbrown.com

Richard F. Bulger (to apply *pro hac vice*)
Richard M. Assmus (to apply *pro hac vice*)
Kristine M. Young (to apply *pro hac vice*)
71 South Wacker Drive
Chicago, Illinois 60606
Tel.: (312) 782-0600
Email: RBulger@mayerbrown.com
Email: RAssmus@mayerbrown.com
Email: KYoung@mayerbrown.com

Carmine R. Zarlenga (to apply *pro hac vice*)
1999 K Street, NW
Washington, D.C. 20006
Tel.: (202) 263-3000
Email: CZarlenga@mayerbrown.com

*Attorneys for Plaintiff 3M Company*